## THELEN v. METROPOLITAN LIFE INS. CO.

### No. 8390.

District Court, W. D. Missouri, W. D.
April 15, 1932.

Henry M. Beardsley and Martin J. Ostergard, both of Kansas City, Mo., for plaintiff.

Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., for defendant.

OTIS, District Judge.

Defendant has demurred to the plaintiff's petition in this case on the ground that it does not state facts sufficient to constitute a cause of action.

The petition purports to state a cause of action for recovery on a policy of life insurance. It alleges the execution of the policy on May 13, 1929, the payment of the first premium on that date, the failure of the insured or of any one for him to pay the second premium which was due May 13, 1930. It is alleged that the insured, who was the plaintiff's husband, died May 3, 1931, or nearly twelve months after the failure to pay the second premium.

By the terms of the policy it lapsed for nonpayment of premium on May 13, 1930, but continued to be in effect for a grace period of thirty days thereafter. The facts pleaded, as so far stated, of course, show that the plaintiff has no cause of action unless the effect of other facts pleaded is to estop, upon the part of the defendant, assertion of forfeiture.

To support the theory of estoppel plaintiff alleges:

First, that the agent of the defendant who solicited the application of the insured and collected the first premium, having been notified by the insured and the plaintiff, who was beneficiary in the policy, that because of the insured's illness and the plaintiff's engage-

ments the premium could not be delivered to him in person, promised that he would call at the home of the insured to collect the premium. It is alleged that the insured had the money on hand with which to pay the premium, but that the defendant's agent did not call for the premium.

Second, it is alleged that the rules and regulations of the defendant require its agent to call at the residence of the insured to collect premiums and deliver receipts therefor when or before premiums become due.

Third, it is alleged that before the due date of the second annual premium defendant's agent procured from the insured the policy and represented that he would obtain a loan on the policy in amounts sufficient to continue it in effect for three months; the agent at the same time agreeing that he would have changed the basis of the premium payments from annual to quarterly payments.

The Supreme Court of the United States in New York Life Insurance Company v. Eggleston, 96 U. S. 572, 577, 24 L. Ed 841, said: "We have recently, in the case of Insurance Company v. Norton [96 U. S. 234, 24 L. Ed. 689], shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture. The representations, declarations, or acts of an agent, contrary to the terms of the policy, of course will not be sufficient, unless sanctioned by the company itself."

It is the rule of law thus declared upon which plaintiff in this case relies. Whether that rule benefits the plaintiff depends upon the questions, first, did the defendant, by its agent, make such an agreement with the insured as that he was thereby led honestly to believe that by conforming with it a forfeiture of his policy would be avoided, and did he conform with that agreement; and, second, did the agent have authority to enter into any such agreement.

■ The second of the two questions put, I think, must be affirmatively answered. It is true that the policy in this case contained an express provision that the agent had no authority "to waive forfeitures, to alter or amend the policy, to accept premiums in arrears or to extend the due date of any premium." But the natural effect of this provision in the policy, which would otherwise be fatal to recovery by the plaintiff, is negatived by section 5733 of the Revised Statutes of Missouri for 1929 (Mo. St. Ann. § 5733), which provides: "Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured. * * * "

This Missouri statute has been construed both by the Missouri courts and the Court of Appeals for the Eighth Circuit as making the soliciting and collecting agent a general agent upon whose authority there are no limits, notwithstanding the express provision of the policy. See Bank Savings Life Insurance Company v. Butler, 38 F.(2d) 972, 974; Madsen v. Prudential Insurance Company of America, 185 S. W. 1168 (St. Louis Court of Appeals).

It must be concluded then that if the defendant's agent did enter into an agreement with the insured extending the time, the effect of which was a waiver of forfeiture for nonpayment of the premium when due, then that agreement is binding upon the defendant, and by reason of it the defendant is estopped to assert forfeiture.

■ We return now to the first question above stated: Did the defendant's agent enter into an agreement, the effect of which was to waive forfeiture for the nonpayment of the second annual premium when due. I think it cannot be so ruled.

The agent promised he would call for the premium that was due, but that fact is insufficient to support an agreement of waiver of forfeiture. If possibly from that fact the inference might be drawn that payment on the exact date when the premium was due was waived unless the agent did call, certainly no inference of the permanent waiver of payment of the premium can be drawn, nor any such unreasonable extension of the time for payment as for the months which elapsed between the due date of the premium and the death of the insured. Here approximately twelve months passed, and no premium was

either paid or tendered. I think that the very most that successfully can be contended for by the plaintiff is that if, the agent failing to call, the payment was tendered to him a few days after it was due, and was then refused, those facts would establish estoppel as against the defendant. The facts pleaded might be sufficient to excuse the insured from failing to pay the premium for a short period, but they cannot alone excuse a failure to pay it after months had gone by.

No facts sufficient to establish estoppel are set up in that part of the plaintiff's petition in which it was alleged that it was the duty of defendant's agent to call at the residence of the insured to collect a premium falling due. There is no such provision in the policy. There is no allegation that any representation was made to the insured by the defendant that the agent would call for a premium due, and that failing to call payment was waived or time therefor extended.

There are no facts sufficient to establish estoppel in that part of the plaintiff's petition in which it is set up that the defendant's agent had procured the policy from the insured and had agreed to obtain a loan thereon with which to pay a quarterly premium. At the very most, interpreting this part of the petition most favorably to the plaintiff, it alleges facts which might estop the defendant from asserting forfeiture of the policy until the expiration of three months (the quarterly period) from the due date of the second premium; but the insured died long after that. If the facts pleaded protected the insured until three months from May 13, 1930, they certainly did not protect him for a longer period, and he was not protected at the time of his death.

My conclusion is that the demurrer should be sustained. It is so ordered.